UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-107-KSF

JAMES H. LIMBRIGHT, et al.                                              PLAINTIFFS

vs.                                    **OPINION AND ORDER**

GEORGE HOFMEISTER, et al.                                               DEFENDANTS

This matter is before the Court on the motion of Defendants to dismiss or, alternatively, to require Plaintiffs to restate their claims under Kentucky law and with particularity.  The parties having fully briefed the motion, it is ripe for consideration.

I.     **BACKGROUND**

In 2000, Innovative Coating Technologies, Inc. ("ICT") purchased from James and Henry Limbright 100 percent of the stock in Performance Plastics, Inc., a Michigan corporation.  ICT's obligation to pay for the stock was evidenced by two promissory notes, which were personally guaranteed by George and Kay Hofmeister, Kentucky residents.  After ICT filed for bankruptcy, Plaintiffs brought an action in this Court to recover on the Hofmeisters' guarantees.  (Case No. 5:01-cv-92-KSF).  Summary judgment in favor of Plaintiffs was granted, and a judgment against the Hofmeisters for $1,200,000 was entered in 2002.  ("Limbright I" or "Kentucky Judgment").  In an effort to collect on the  Kentucky Judgment, the Limbrights registered it in the Eastern District of Michigan and initiated supplementary proceedings against the trustee of three family trusts ("Family Trusts") established by George Hofmeister for the benefit of each of his three children.  The parties entered into a settlement agreement in Michigan whereby the Family Trusts were to pay the Limbrights $950,000.  *See Limbright v. Hofmeister*, 553 F. Supp.2d 886, 887 (E.D. Mich. 2008) (Limbright II).   When the Family Trusts defaulted, the court enforced the settlement agreement and entered judgment in the amount of $1,000,000 against the trustee of the Family

Trusts (the "Michigan Judgment").  *Id.*  An appeal challenging the lower court's jurisdiction was rejected, and the Sixth Circuit affirmed the Michigan Judgment.  *Limbright v. Hofmeister*, 566 F.3d 672 (6th Cir. 2009) (Limbright III).

Shortly after the Michigan Judgment, the Limbrights initiated a Supplementary Proceeding in the Eastern District of Michigan, adding several new defendants – the three Hofmeister children (the "Children") and the "John Doe" trustees of the irrevocable trusts the Children established (the "Children's Trusts").  *Limbright v. Hofmeister*, 2009 WL 915803 at *1-2 (E.D. Mich 2009) (Limbright IV).  The Limbrights claimed that assets were fraudulently transferred to the Children or Children's Trusts to avoid paying the judgments and that these trusts were the alter egos of the Hofmeisters or the Family Trusts.  *Id.* at *1.  The Michigan court found that the trustee of each of the Children's Trusts is the father, George Hofmeister.  *Id.* at *2.  It concluded it did not have personal jurisdiction over the Children and dismissed them.  *Id.* at *7.  However, it did not dismiss the Children's Trusts. *Limbright v. Hofmeister*, 2009 WL 1035961   at *1 (E.D. Mich. 2009) (Limbright V).   After considering the relevant factors, such as the convenience of the parties and witnesses, access to sources of proof, and the like, the Michigan Court concluded that "venue of this action is properly laid in the Eastern District of Kentucky where George and Kay Hofmeister and the Hofmeister children reside."  *Limbright IV* at *1.

Following transfer of the Supplementary Proceeding to this Court, Defendants moved to dismiss for failure to state a claim or, alternatively, to require Plaintiffs to restate their claims. Defendants argue that Count I, alleging fraudulent transfer to avoid the Michigan judgment, should be dismissed because the Michigan Judgment is not recognized by Kentucky.  They argue that Counts II, III and IV, alleging fraudulent transfers to avoid the Kentucky and Michigan judgments, should be dismissed because these counts rely on Michigan statutes and remedies, rather than Kentucky procedures for collecting a judgment and that the Michigan statutes bear no relation to non-Michigan transfers.   They further argue that Counts II, V and VI, which allege fraudulent

2

transfer and that the Childrens' Trusts are the alter egos of the Hofmeisters and the Hofmeister Family Trusts, should be dismissed for failure to plead fraud with specificity under Fed. R. Civ. P. 9(b).   Alternatively, Defendants ask that Plaintiffs be ordered to re-plead their claims with the particularity required under Rule 9.   Finally, they argue that Count VII, seeking appointment of a receiver, should be dismissed because it seeks a receiver for property owned by non-parties.   [DE 40, p. 2].   These contentions and the responsive arguments are considered below.

II.   ANALYSIS

    A.   **Motion to Dismiss Standard**

    To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.   Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 555 (citations and quotation marks omitted).   *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).   In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).

    A district court may not grant a Fed. R. Civ. P. 12(b)(6) motion because it does not believe the complaint's factual allegations. *Wright v. MetroHealth Medical Center,* 58 F.3d 1130, 1138 (6th Cir.1995).   However, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

**B.    Defendants' Motion to Dismiss**

In their Complaint in Supplementary Proceedings, the Plaintiffs allege that since the time of the settlement negotiations and thereafter, the Hofmeister Family Trusts fraudulently transferred a number of assets ("Hofmeister Family Trust Transferred Assets" or "HFTTA") to or for the benefit of the Supplementary Defendants (the Children and/or Childrens' Trusts).  Several transferred assets are specifically listed – a condominium in Florida, a controlling interest in AHD International LLC, and controlling interests in MW Universal, Inc. and its subsidiaries with facilities in Michigan – AMI Manchester, LLC; LC Manufacturing, LLC; and Scott Products, Inc.   Complaint ¶ 16. Plaintiffs further allege that, since the date of the Kentucky Judgment, the Hofmeisters fraudulently transferred assets to or for the benefit of the Supplementary Defendants ("Hofmeister Transferred Assets" or "HTA").  *Id.* at ¶ 17.

1.    Motion to Dismiss Counts Relying On Michigan Law

Plaintiffs' Count I alleges that the Hofmeister Family Trusts transferred assets to the Children and Childrens' Trusts in violation of Plaintiffs' rights as creditors under the Michigan Judgment.   Count II alleges that the Hofmeisters similarly transferred assets in violation of Plaintiffs' rights under the Kentucky Judgment.   Counts III and IV allege that conveyances of the HFTTAs (III) and HTAs (IV) were done to hinder the remedies of the Plaintiffs and are fraudulent transfers under Michigan law.

In support of their motion to dismiss, Defendants rely on Fed. R. Civ. P. 69, which provides in part that the "procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located." Defendants further rely on Kentucky Rule of Civil Procedure ("CR") 69.03, which provides in part that the "procedure in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the Kentucky Revised Statutes."  Defendants argue that Plaintiffs' remedies are limited to those authorized by the Kentucky statutes and that

4

even these are not available in the present case because the Michigan Judgment has not been

registered in Kentucky.  Citing *Euro-American Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431

F. Supp.2d 705 (E.D. Ky. 2006), they claim that registration of a foreign judgment is required before

it can be enforced according to Fed. R. Civ. P. 69 and the state laws where the federal district court

sits.  Defendants further contend that Plaintiffs' action must be dismissed because it relies on

Michigan statutory remedies, rather than Kentucky law.

Plaintiffs respond that this case was transferred from Michigan to Kentucky pursuant to 28

U.S.C. § 1404(a); therefore, the law of the transferor court (Michigan) applies.  The United States

Supreme Court decided more than four decades ago that:

> where the defendants seeks transfer, the transferee district court must be obligated
> to apply the state law that would have been applied if there had been no change of
> venue.  A change of venue under § 1404(a) generally should be, with respect to
> state law, but a change of courtrooms.

*Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964).  In *Van Dusen*, there was a similar issue

regarding interpretation of a civil rule calling for application of local law.  *Id.* at 640.  Rule 17(b)

required that a personal representative's capacity to sue "shall be determined by the law of the

state in which the district court is held."  *Id.* The Plaintiffs were qualified under the law of the

transferor court, Pennsylvania, but not under the law of Massachusetts, the transferee court's

location.  The court held that federal diversity jurisdiction should not allow a party to transfer and

achieve a different result than could be achieved in the courts where the action was filed.  *Id.* at

638.  "This purpose would be defeated in cases such as the present if nonresident defendants,

properly subjected to suit in the transferor State (Pennsylvania), could invoke § 1404(a) to gain the

benefits of the laws of another jurisdiction (Massachusetts)."  *Id.*  Accordingly, the Court interpreted

Rule 17(b) "to refer to the laws of the transferor State (Pennsylvania)."  *Id.* at 641.  *See also*

*Northland Ins. Co. v. Guardsman Products, Inc.*, 141 F.3d 612, 616 (6th Cir. 1998) ("The transferee

court must apply the law of the state where the suit was originally filed....); *In re Bendectin*

*Litigation*, 857 F.2d 290, 305 (6th Cir. 1988) ("[W]hen a plaintiff files suit in a federal court with

proper venue, and the defendant transfers it to a new federal court for convenience, the transferor state's law (including its conflicts law) applies."); *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980) ("Once a plaintiff has exercised his choice of forum by selecting a permissible forum, the state law of that forum should govern the action, regardless of the wisdom of the plaintiff's selection. Thus, no matter who seeks to transfer the action to a more convenient forum under § 1404(a), the state law of the forum in which the action was originally commenced remains controlling."); *Carr v. American Universal Ins. Co.*, 341 F.2d 330, 224 (6th Cir. 1965) (A transferred case "must be treated as if it were being tried in the transferor state.").

Because this case was transferred pursuant to 28 U.S.C. § 1404(a), Michigan law must be applied. Consistently with these controlling precedents, this Court interprets Rule 69 to refer to the laws of the transferor State (Michigan). Plaintiffs are entitled to proceed based upon the law of the transferor court and the relief available to them in that court. The motion to dismiss for Plaintiffs' failure to allege Kentucky law in support of their complaint will be denied.

2. Motion to Dismiss for Failure to Plead Fraudulent Intent with Particularity

Defendants argue that a claim of fraudulent transfer is a claim of "fraud" and must be pleaded with particularity under Fed. R. Civ. P. 9(b). Defendants contend that the allegations in the Complaint do not satisfy Rule 9(b) and must be dismissed or pleaded again with greater specificity.

Plaintiffs respond that "Rule 9(b) exists predominantly for the same purpose as Rule 8: 'to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.'" *United States v. Ford Motor Co*, 532 F.3d 496, 504 (6th Cir. 2008). Plaintiffs note that Defendants filed responsive pleadings in this case without difficulty before filing the present motion. Thus, they argue any requirements of Rule 9(b) were met.

Plaintiffs further argue that they stated a claim under the Michigan Uniform Fraudulent Transfer Act by merely alleging that they obtained a judgment against the Hofmeisters and that the

Hofmeisters conveyed property.  The burden then falls on the Hofmeisters "to show that the transaction is in all respects bona fide...."  M.C.L. § 600.6131(1).  *See also Floyd v. Roberts*, 335 Mich. 696, 57 N.W.2d 301, 303 (1953).   If the transfer was made within one year of the commencement of the action in which judgment is entered and the transfer was to the judgment debtor's wife or relative or person on confidential terms, the judgment debtor must establish that the transfer "was not made for the purpose of delaying, hindering, and defrauding creditors."  M.C.L. § 600.6131(3).  The plaintiff is not required to allege fraudulent intent at all, much less with particularity.  While one type of fraudulent transfer does involve "actual intent to hinder, delay, or defraud any creditor of the debtor," that is not the only type.  *See* M.C.L. § 566.34(1)(a).  *See also Limbright v. Hofmeister* , 2009 WL 915803 at *7 (E.D. Mich. 2009) ("The absence of allegations of actual fraud by the Hofmeister children does not suggest a defect in the plaintiffs' cause of action, since intent to defraud is sometimes not an element of a fraudulent transaction claim.").  Count II of the Complaint alleges a judgment and conveyances by the Hofmeisters, thus meeting Michigan law requirements for fraudulent transfer.

Additionally, a transfer is fraudulent as to a creditor if the transfer is  made without receiving reasonably equivalent value and the debtor engages in a business transaction for which its remaining assets were unreasonably small or the debtor was or became insolvent shortly after the transfer was made.  M.C.L. § 566.34(b), 566.35.  These allegations regarding the Hofmeister Family Trusts are set forth in Court III of the Complaint.[1]   Similar allegations regarding the Hofmeisters are contained in Court IV of the Complaint.  Paragraph 16 lists several specific assets transferred by the Hofmeister Family Trusts.   Paragraph 17 alleges further transfers by the Hofmeisters.  These allegations of constructive fraud do not require allegations of fraudulent intent.

Under Michigan law, the "actual intent of one who transfers assets to others without a fair consideration is unimportant where it leaves the transferor insolvent."  *Hudson v. Maher*, 55 Mich.

---

[1]  Defendants do not claim a Rule 9(b) violation as to Count III.

7

App. 90, 222 N.W.2d 47, 48 (1974), citing *Farrell v. Paulus*, 309 Mich. 441, 15 N.W.2d 700 (1944).

In *Eclaire Advisor Ltd. v. Daewoo Engineering & Const. Co., Ltd.*, 375 F. Supp.2d 257 (S.D. N.Y. 2005), the court considered similar arguments under New York law.

> However, the sections of New York law here at issue deal with constructive fraud, whereby certain transactions are fraudulent as a matter of law because of when or for what consideration they were made, and not because they were undertaken with fraudulent intent. This is not the kind of fraud to which Rule 9(b) applies.

*Id.* at 268. *See also Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 281 B.R. 506, 518 (Bankr. E.D. N.Y. 2002) ("The weight of authority holds that a claim for constructive fraudulent conveyance is not required to be pleaded with particularity under Fed. R. Civ. P. 9(b)."); *Bratek v. Beyond Juice, LLC*, 2005 WL 3071750 at *6 (E.D. Pa. 2005) ("Rule 9(b) does not apply to allegations where the law assumes fraudulent intent.").

Florida courts have held that Rule 9(b) does not apply to claims brought under the Florida Uniform Fraudulent Transfers Act. In *Steinberg v. Barclay's Nominees, Ltd.*, 2008 WL 4601043 (S.D. Fla. 2008), the court said:

> The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA. Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction. Therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred. The fraudulent act, the clandestine act of hiding money, is allegedly committed by a defendant and another, to the exclusion of the plaintiff. This is in stark contrast to a common law fraud claim where a plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff. Under such circumstances, the plaintiff is in a position to plead with the specificity required by Rule 9(b). This Court concludes that despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed. Given this lack of access to information on the part of a plaintiff in a fraudulent transfer case, the application of a heightened pleading standard is inappropriate.

*Id.* at *12 (internal citations omitted). *See also Court-Appointed Receiver for Lancer Management Group LLC. v. 169838 Canada, Inc.*, 2008 WL 2262063 at *2 (S.D. Fla 2008) (referencing previous holding that Rule 9(b) should not be applied to cases involving violations of the Florida Uniform Fraudulent Transfers Act); *Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital*

*Co., LLC*, 2007 WL 2826603 at *5 (S.D. Fla. 2007) ("[T]his Court agrees ... that Rule 9(b)'s particularity requirement does not apply to claims of constructive fraud.").

Additionally, fraud may be inferred from the circumstances surrounding the transaction. "Surrounding circumstances which usually accompany an intent to hinder, delay or defraud creditors and from which fraud may be inferred are called 'badges of fraud.'" *Bentley v. Caille*, 289 Mich. 74, 286 N.W. 163, 164 (1939). "No effort to hinder or delay creditors is more severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require his creditors to remain unsatisfied." *Id*.

This Court agrees with the rationale in the above-cited cases. Plaintiffs in the present case allege that the Hofmeisters and the Hofmeister Family Trusts conveyed assets to the Children or Childrens' Trusts without receiving reasonably equivalent value in exchange and while the transferring entities were insolvent or had inadequate remaining assets to engage in a business or pay debts when due. Plaintiffs' claims of constructive fraud do not require actual intent, and the heightened pleading requirements of Rule 9(b) are not applicable. Defendants' reliance on cases involving allegations of actual intent to defraud is misplaced under the facts of this case. [DE 45].

### 3. Motion to Dismiss for Failure to Plead Alter Ego with Particularity

In Counts V and VI, Plaintiffs allege that the Childrens' Trusts are "mere instrumentalities of the Hofmeisters" (V) or "mere instrumentalities of the Hofmeister Family Trusts" (VI) that are being used to commit fraud or other wrongful acts, resulting in an unjust loss or injury to the Judgment Plaintiffs. [Complaint ¶¶ 37, 39]. Defendants argue that these allegations sound in fraud, but do not satisfy the requirement of Rule 9(b) that fraud be pleaded with particularity. Similar to Defendants' arguments regarding fraudulent transfer, this argument erroneously assumes intent to defraud is an element of the basis for relief.

The typical context of invocation of the equitable remedy of disregarding a legal entity is when a plaintiff seeks to "pierce the corporate veil." The usual claim is that the corporation is

9

merely an "instrumentality" or the "alter ego" of the shareholders such that the two entities should be considered as one for purposes of imposing liability. "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have the corporate structure in an attempt to avoid legal obligations." *The Insurance Co. of Pennsylvania v. Alternative Ins. Services, Inc.*, 2009 WL 1438801 at *2 (E.D. Mich. 2009). Here, Plaintiffs seek to disregard the various trusts as separate legal entities and treat them the same as the Hofmeisters or the Hofmeister Family Trusts for purposes of liability to the Plaintiffs.

*William L. Comer Family Equity Trust v. United States*, 732 F. Supp. 755 (E.D. Mich. 1990), involved a couple who placed virtually all of their assets in family trusts. The Internal Revenue Service levied against the trust property to satisfy a tax lien. The court used "piercing the corporate veil" analysis for guidance and concluded that the sole function of the trusts "is to manipulate the Comers' income and assets." *Id.* at 760. The court viewed transactions between the trusts or between the trusts and Mr. and Mrs. Comer "as legal nullities." *Id. See also Farrell v. Paulus*, 309 Mich. 441, 15 N.W.2d 700, 704 (1944) ("As a general rule transactions between members of a family must be closely scrutinized when the rights of creditors are involved and when such transactions are accompanied by other badges of fraud, a full explanation of the conveyance is required when it is challenged by an unsatisfied creditor.").

While fraud is a common element of an alter ego claim, fraud is not required. In *Bucyrus-Erie Co. v. General Products Corp.*, 643 F.2d 413 (6th Cir. 1981), the court said:

> Though fraud is a frequent ground for application of the alter ego doctrine, it is not essential. The courts will disregard the corporate fiction when its retention would produce injustice or inequitable consequences.

*Id.* at 419. This decision was based on Ohio law, but other jurisdictions support the same conclusion.

Defendants cite *Lewis LP Gas, Inc. v. Lambert*, 113 S.W.3d 171 (Ky. 2003) for the proposition that "[f]raud is required to prove alter ego under Kentucky law."  [DE 45, p. 11].  This Court disagrees with Defendants' interpretation of Kentucky law.  Kentucky's landmark case on piercing the corporate veil established the elements of the alter ego theory as follows:

> As regards the alter ego formulation, the elements thereof have been defined as follows:  (1) that the corporation is not only influenced by the owners, but also that there is such a unity of ownership and interest that their separateness has ceased; and (2) that the facts are such that an adherence to the normal attributes, Viz, treatment as a separate entity, of corporate existence would sanction a fraud **or promote injustice**.

*White v. Winchester Land Development Corp.*, 584 S.W.2d 56, 62 (Ky. Ct. App. 1979) (emphasis added).  Two recent decisions, both of which have discretionary review motions pending, illustrate this point.  In *Inter-Tel, Inc. v. Linn Station Properties, LLC*, ___ S.W.3d ___, 2009 WL 3878099 (Ky. Ct. App. 2009), the court considered whether the elements of common law fraud must be shown to pierce the corporate veil.  It rejected that argument as follows:

> We have carefully reviewed the *White* opinion, and subsequent related opinions of this Court, and do not believe that under Kentucky law a finding of strict fraud is required in order to pierce the corporate veil.

*Id.* at *9.  In *Bear, Inc. v. Smith*, ___ S.W.3d ___, 2010 WL 199416 (Ky. Ct. App. 2010), the court held that there was no evidence of fraud under the circumstances of the case.  Nonetheless, the court reversed summary judgment and held there was sufficient evidence for plaintiff to go forward for relief through piercing the corporate veil.  "Although these circumstances fall short of fraud, they provide some evidence demonstrating a genuine issue of material fact as to whether Tony H. Smith abused the corporate form by disregarding it and by using it to undermine Laker Express's ability to seek legal recourse."  *Id.* at *9.  *See also Big Four Mills v. Commercial Credit Co.*, 307 Ky. 612, 211 S.W.2d 831, 834 (1948) ("[A] court will on appropriate occasions ignore the distinction between corporate entities where its recognition would operate as a shield for fraudulent or criminal acts or where subversive of the public policy of a state"); *Dare to Be Great, Inc. v. Kentucky ex rel Hancock*, 511 S.W.2d 224, 227 (Ky. 1974) ("[W]hen the idea of separate legal entity is used to

justify wrong, protect fraud or defend crime, the law will regard the corporation as an association of persons"); *Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.,* 621 S.W.2d 705, 708 (Ky. Ct. App. 1981) ("It is settled that a court will ignore a corporate entity where it serves as a shield for fraudulent or criminal acts or where it serves to subvert the public policy of this state.").

Defendants argue that fraud is "substantially required under Indiana law as well," citing *Extra Energy Coal Co. v. Diamond Energy & Resources, Inc.*, 467 N.E.2d 439, 441-42 (Ind. Ct. App. 1984). [DE 45, p. 11]. *Extra Energy* states, however, that Indiana courts will disregard the corporate entity to "protect innocent third parties from fraud **or injustice** when transacting business with a corporate entity." *Id.* at 442, emphasis added.

Defendants argue under Michigan law that "fraud is required to prove such a claim (three elements, one of which is fraud)." [DE 45, p. 11]. The case on which they rely, *Foodland Distributors v. Al-Naimi*, 220 Mich App. 453, 559 N.W.2d 379 (1996), does not support this contention. "The second element required to pierce the corporate veil is that the corporate entity must be used to commit a fraud **or wrong**." *Id.* at 381, emphasis added. It later states: *See also Papo v. Aglo Restaurants* [149 Mich. App. 285, 386 N.W.2d 177 (1986] and the additional cases cited therein for the proposition that **the corporate veil can be pierced even in the absence of fraud**." *Id.* at 382, emphasis added. The *Papo* court said: "The Supreme Court, on more than one occasion, has acknowledged that the corporate veil can be pierced in the absence of fraud." *Papo*, 386 N.W.2d at 185. Interestingly, *Foodland Distributors* also says that the "traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Id.* That factual scenario bears a strong similarity to the Plaintiffs' allegations in the present case.

Finally, Defendants argue that Ohio law is applicable to claims regarding the Family Trusts in Court VI and that "Ohio courts require fraud." [DE 45, p. 12]. In support, they cite *Belvedere*

*Condominium Unit Owners' Assoc. v. R.E. Roark Companies, Inc.*, 617 N.E.2d 1075 (Ohio. 1993). Once again, this Court disagrees with Defendants interpretation of the law.  First, the *Belvedere* standard was "fraud or illegal act."  *Id.* at 1086.  More importantly, Defendants failed to disclose that Ohio subsequently expanded the *Belvedere* test.  "There are compelling reasons to follow the majority of the courts of appeals and expand the fraud-or-illegal-act test in *Belvedere.*"  *Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008).

> [W]e find it necessary to modify the second prong of the *Belvedere* test to allow for piercing in the event that egregious wrongs are committed by shareholders.
>
> Accordingly, we hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act.

*Id.* at 545.  Thus, Ohio will pierce the corporate veil for reasons other than fraud.

The foregoing authorities demonstrate that Defendants' motion to dismiss Counts V and VI for failure to plead fraud with particularity is not well taken.  The motion will be denied.

### 4.      Motion to Dismiss Count VII Because the Children Are Not Parties

Count VII of the Complaint requests appointment of a receiver for the "assets and interests represented by the Hofmeister Family Trust transferred assets."   In defining these assets in Paragraph 16 of the Complaint, Plaintiffs alleged that assets of the Hofmeister Family Trusts were transferred "to or for the benefit of the Supplementary Defendants."   The Supplementary Defendants named in the Complaint are the Children and the Childrens' Trusts.  The Michigan court dismissed the Children from this action, without prejudice, as they were beyond the personal jurisdiction of that court.  *Limbright*, 2009 WL 915803 at *1, *7, *9.

Defendants seek dismissal on the ground that it would be a violation of due process to appoint a receiver for the Children's assets when the Children are not parties to the action.  [DE 40, p. 16].  Plaintiffs respond that Defendants cite no authority for their contention.  Plaintiffs further note that, as beneficiaries to the Family Trusts, the Children do not own the assets held by the

13

Hofmeister Family Trusts. Instead, they are held by the Trustee, who is a party. With respect to the Childrens' Trusts, George Hofmeister, trustee, is a party to this action. Plaintiffs further rely on authorities cited in their Motion for Reconsideration in the Michigan court. [DE 44, pp. 17-18; DE 44-3]. In that motion, Plaintiffs also argued that the Children, as transferors to the Childrens' Trusts, no longer held title to the transferred assets and are not necessary parties.

In reply, the Defendants still do not cite any authority to refute Plaintiffs' arguments. However, they note that Plaintiffs' Complaint makes broad allegations regarding transfers to the "Supplementary Defendants," which necessarily includes the Children. To the extent that Plaintiffs intend to dispossess the Children of assets owned by them, Defendants argue that the Children must be joined as parties or such claims must be dismissed.

Plaintiffs agree that "a request for relief does not apply to dismissed parties." [DE 44, p. 18]. They note, however, that they anticipate filing a motion "to amend the complaint to add the Hofmeister children." [DE 44, p. 20]. They further request leave to amend their complaint to cure any other deficiencies and note that dismissal is ordinarily not appropriate under the circumstances.

To the extent that Plaintiffs intend to seek assets owned by the Children, this Court agrees that the Children must be named as parties. Accordingly, Defendants' motion to dismiss will be granted to that limited extent.

It is premature for the Court to consider a request to amend the Complaint at this time. Such a request can only be considered in the context of a motion and proposed amended complaint, to which the Defendants have an opportunity to respond.

## III.   CONCLUSION

**IT IS ORDERED** that Defendants' motion to dismiss Plaintiffs' Complaint [DE 40] is **DENIED** in part and **GRANTED** in part. The motion is granted to the limited extent that Plaintiffs seek relief with respect to assets owned by the Children, but the dismissal is without prejudice to Plaintiffs'

stated intention to move to file an amended complaint.  Any proposed amended complaint shall be tendered with a motion **on or before February 15, 2010**.

This February 1, 2010.

**Signed By:**

***Karl S. Forester*** *K S F*

**United States Senior Judge**