UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-107-KSF

JAMES H. LIMBRIGHT, et al.                                           PLAINTIFFS

vs.                            **OPINION AND ORDER**

GEORGE HOFMEISTER, et al.                                        DEFENDANTS

This matter is before the Court on the motions of Supplementary Defendants Megan G. Hofmeister and Jamie S. Hofmeister to partially dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The matter has been fully briefed and is ripe for consideration. For the reasons stated below, the motions are denied.

**I.    BACKGROUND**

In 2000, Innovative Coating Technologies, Inc. ("ICT") purchased from James and Henry Limbright 100 percent of the stock in Performance Plastics, Inc., a Michigan corporation. ICT's promissory notes for the purchase were personally guaranteed by George and Kay Hofmeister, Kentucky residents. After ICT filed for bankruptcy, Plaintiffs brought an action in this Court to recover on the Hofmeisters' guarantees. Summary judgment in favor of Plaintiffs was granted, and a judgment against the Hofmeisters for $1,200,000 was entered in 2002. ("Limbright I" or "Kentucky Judgment").

The Limbrights registered the judgment in Michigan and initiated supplementary proceedings against the trustee of three family trusts established by George Hofmeister for each of his three children. The parties entered into a settlement agreement whereby the Family Trusts were to pay the Limbrights $950,000. *Limbright v. Hofmeister*, 553 F. Supp.2d 886, 887 (E.D. Mich. 2008) ("Limbright II"). When the Family Trusts defaulted, the court entered judgment in the amount of $1,000,000 against the trustee of the Family Trusts. ("Michigan Judgment").

Plaintiffs then filed a Complaint in Supplementary Proceedings in the United States District Court, Eastern District of Michigan, on May 30, 2008, adding the three Hofmeister children and the "John Doe" trustees of trusts created by the Children ("Children's Trusts"). On June 30, 2008, Defendants filed motions pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6) and 12(e) to dismiss. [DE 12]. The Michigan court granted the motion to dismiss defendants Megan G. Hofmeister, Scott R. Hofmeister, and Jamie S. Hofmeister ("Children") for lack of personal jurisdiction and transferred the case to this Court. All other motions to dismiss were denied. [DE 27]. The Michigan court later clarified that it did not intend to rule on the adequacy of the Plaintiffs' allegations of fraud in the complaint and deferred to this Court on that issue. [DE 80, p. 9, n. 7].

Plaintiffs' Amended Complaint naming the Children was filed in this Court March 4, 2010. [DE 50]. It is undisputed that the allegations in the Amended Complaint are identical to those in the original Complaint. [DE 1, 50].

Before the Children were served with the Amended Complaint, the other Defendants filed two motions to dismiss aimed at limiting the available damages. The motion filed May 13, 2009, was granted to the limited extent that assets of the Children would not be available as a remedy so long as the Children were not parties. [DE 46]. The motion filed March 18, 2010, argued the Defendants were entitled to a ruling on the contours of available damages [DE 54] and was denied as a successive motion, which is prohibited under Fed. R. Civ. P. 12(g)(2). [DE 58].

Two of the Children, Megan Hofmeister ("Megan") and Jamie Hofmeister ("Jamie") have now been served, and each has filed a new motion to partially dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [DE 62, 76]. Counsel for these Children is the same counsel who filed the three previous motions to dismiss. [DE 12, 40, 54].

Megan's motion sought dismissal of the claims against her on the following grounds: Count I – that the Michigan Judgment had not been registered in Kentucky, only remedies under Kentucky law would be applicable to her, which would not include a money judgment, and that the

Florida condominium cannot be reached other than by a proceeding in Florida [DE 62, pp. 3-7]; Count II – that the allegations of transfers lack the specificity required by the Federal Rules 8 and 9, and that no money judgment is available [*Id.* at 7-11]; Count III – that no money judgment is available and the Florida condominium cannot be reached [*Id.* at 11-12]; Count IV – the allegations lack requisite specificity and no money judgment is available [*Id.* at 12]; Counts V and VI – that human beings cannot be the alter egos of human beings and the Florida condominium cannot be reached [*Id.* at 13-14]; Count VII – that the Florida condominium cannot be reached [*Id.* at 14].

Plaintiffs responded that the Michigan judgment has now been registered in Kentucky; it is plausible that Michigan law would be applicable to the whole case; and that even application of Kentucky law would not result in a different outcome. They further responded that Kentucky law would allow a money judgment against Megan; that all issues should have been raised in the first motion to dismiss, and that this is an improper second motion to dismiss; that the Court's personal jurisdiction over Megan authorizes it to order Megan to take action regarding property outside of Kentucky; that this Court has already ruled that the specificity requirements of Rules 8 and 9 are not applicable or are satisfied here; and that Counts V and VI apply only to the Children's Trusts, rather than to Megan personally. [DE 71]

In reply, Megan changes her first argument to focus on choice of law. She does not dispute the applicability of Michigan law to the other parties because the case against them was transferred from Michigan. Instead, she claims Kentucky law must apply to her because her case was not transferred and she has no connection with Michigan. Then, she insists that Kentucky and Michigan law are not "basically the same" because "Michigan statutes contain a burden-shifting rule" applicable after the showing of a prima facie case, and "[n]o such burden-shifting rule appears in the text of the Kentucky statute." [DE 74, pp. 3-4]. Megan reasserts her arguments on other issues and attempts to distinguish Plaintiffs' authorities.

3

The subsequently filed motion for partial dismissal by Jamie Hofmeister begins identically to Megan's motion, but quickly evolves into a choice of law argument, which then parrots Megan's reply. [Compare DE 76, p. 6 with DE 74, p. 3]. Next, Jamie argues that Kentucky law should apply to her "even if the distinctions were only nuanced." [DE 76, p. 6]. Jamie's motion then becomes an almost verbatim recitation of Megan's motion with emphasis added here and there and Megan's name changed to Jamie's.

Purely for convenience, Megan and Jamie may be referred to in this Opinion as the "Defendants," rather than Supplementary Defendants.

## II. ANALYSIS

### A. Successive Motions to Dismiss

In reply to Plaintiffs' argument that the present motion is an improper second pre-answer motion, Defendants say that "Plaintiffs cite no authority for the proposition that a defendant seeking to quash a court's summons based on personal jurisdictional grounds must also raise every conceivable defense to the claim (or lose the right to raise them at the pleading stage)." [DE 74, p. 7; DE 80, p. 7].

Defendants' argument totally ignores this Court's Opinion and Order dated April 27, 2010, [DE 58] and its discussion of Fed. R. Civ. P. 12(g). Rule 12(g) provides:

> ***Limitation on Further Motions.*** Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

The Rule 12(h) exceptions do not apply here. In *Rauch v. Day and Night Manufacturing Corp.*, 576 F.2d 697, 701, n. 3 (6th Cir. 1978) the court said:

> Rule 12 was drafted by the Advisory Committee to prevent the dilatory motion practice fostered by common law procedure and many of the codes whereby numerous pretrial motions could be made, many of them in sequence, a course of conduct that often was pursued for the sole purpose of delay. ... Indeed, the only persons to whom Rule 12(g) presents a hazard are motion-minded lawyers who, for force of habit or lack of good faith, cannot close their pleadings or come to issue without attempting to make numerous motions . *** **Subdivision (g) contemplates**

> **the presentation of an omnibus pre-answer motion in which defendant advances every Rule 12 defense and objection he may have that is assertable by motion**. He cannot delay the filing of a responsive pleading by interposing these defenses and objections in a piecemeal fashion but must present them simultaneously. Any defense that is available at the time of the original motion but is not included, may not be the basis of a second pre-answer motion.

*Id.*, emphasis added. [DE 58 at 2-3].

The Judgment Defendants and the Supplementary Defendants filed their first motion to dismiss while Megan and Jamie were parties. [DE 12]. The defenses they raise now were available at that time. This Court has already ruled that the filing of the Amended Complaint did "not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." [DE 58 at 3, quoting Wright & Miller, 5C Federal Practice & Procedure § 1388 (2010 update)]. Even a casual observer would conclude that the present motions were filed solely for the purposes of delay. Megan and Jamie's motions to dismiss will be denied as second motions prohibited by Rule 12(g).

    **B.    Choice of Law**

Megan and Jamie assert that claims against them are not controlled by Michigan law because they are not part of the case transferred from Michigan. They cite to tort cases in which the Kentucky choice of law test is "sufficient contacts," and they assume only Kentucky law would be applicable to them. It is premature at this stage to decide which state law may provide the remedy in the event the Children are determined to be the recipients of fraudulent transfers. Moreover, it is not clear there is any conflict. If the laws of both states would produce the same result, there is a "false conflict" and no further analysis is necessary. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 209 (6th Cir. 2008).

The Defendants claim that Michigan applies a statutory burden-shifting analysis, whereas Kentucky's statute does not include such a rule in the text. [DE 76, p. 7]. Courts applying Kentucky law, however, use a similar burden-shifting analysis. *Russell County Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 312 (Ky. 1975) ("The plaintiff's proof clearly established that all parties to the

5

conveyance occupied both a confidential and close family relationship ... which was alone sufficient to effect a shift to the [defendants] of the burden to offer evidence showing that no fraud was involved in the conveyance."); *Pope v. Cawood.*, 293 Ky. 660, 170 S.W.2d 55, 58 (1943) ("[W]here there is a charge of fraudulent conveyance between relatives, the burden is on the grantee to show bona fides.");*Madison Capital Co., LLC v. Smith*, 2009 WL 482093 at *5 (W.D. Ky. 2009) ("When at least one badge of fraud is present, the burden shifts to the defendant....").

The Defendants argue that certain remedies alleged in the Amended Complaint, such as a judgment against them, would not be available under Kentucky law. Plaintiffs rely on *Obipektin AG v. Falkon International, Inc.*, 2010 WL 411501 (W.D. Ky. 2010), which says: "In the event a transaction is determined to be void under this statute, the appropriate remedy appears to be judgment against the recipient of the transfer." *Id.* at *2.

Defendants insist that Kentucky law should be applied, rather than Michigan, "even if the distinctions were only nuanced." To the contrary, there appears to be no conflict and no reason to engage in a choice-of-law analysis. Additionally, Plaintiffs prayed for various forms of relief. Dismissal for failure to state a claim is not warranted merely because one form of requested relief is unavailable.

Moreover, Plaintiffs' claim is that there has been a fraudulent transfer in violation of their rights as creditors. Construing the Amended Complaint in the light most favorable to the Plaintiffs, there is a plausible claim of fraudulent conveyance under either Michigan or Kentucky law. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants' motion to dismiss Count I will be denied.

### C. Florida Condominium

Defendants argue several counts in the Amended Complaint should be dismissed because Kentucky courts cannot take action with respect to a Florida Condominium that may be a

fraudulently transferred asset. [*See*, e.g., DE 62 at 7, 12, 14]. In *Rogers v. Webster*, 1985 WL 13788 (6th Cir. 1985), the court said:

> Even though a court of Michigan may not directly affect title to property located outside the state, it may compel the defendant to do equity in relation to the property by exercising its in personam jurisdiction over him, and thereby affect title to such foreign property indirectly.
>
> Thus, where a Michigan court has acquired jurisdiction of a defendant's person, it may order him to do acts with respect to property located outside Michigan, [*Emmons v. Emmons,* 355 N.W.2d 898, 902 (Mich. Ct. App. 1984)] (defendant ordered to convey title to Florida condominium), and even with respect to property located outside the United States.

*Id.* at *1-2. *See also Louisville & N. R. Co. v. Western Union Telegraph Co.*, 207 F.1, 6 (6th Cir. 1913) ("The general rule is well established that where the necessary parties are before a court of equity, it is immaterial that the subject matter of the controversy, whether real or personal property, is beyond the territorial jurisdiction of the court."). Defendants' argument is not well taken.

### D. Complaint Lacks Specificity

Defendants argue that Courts II and IV should be dismissed for failure to plead with specificity. [*See e.g.,* DE 62 at 8, 12]. As with all other issues in these motions to dismiss, this is a defense that was available but was not included in the original motion to dismiss. The motion is now barred under Rule 12(g). Defendants argue that the Michigan court left the issue of sufficiency of allegations of fraud to be decided by this Court. [DE 80 at 9]. That is true, but the issue was decided by this Court on February 10, 2010, when the second motion to dismiss was denied. [DE 46]. Defendants vary the issue slightly in the present motion, but it remains a defense that should have been raised in the first motion to dismiss.

### E. Alter Ego Theory

Defendants argue, without authority, that a human being cannot be the alter ego of other human beings. [*See e.g.,* DE 62 at 13]. That is not what the Amended Complaint alleges, however. Count V alleges the "Hofmeister Children Trusts are instrumentalities of the Hofmeisters"; Count VI alleges the "Hofmeister Children Trusts are mere instrumentalities of the Hofmeister Family

7

Trusts." [DE 50 at 12-13]. The prayer for relief only asks for relief with respect to the Hofmeister Children Trusts. The plain language of the Amended Complaint shows these counts are not applicable to Megan and Jamie as individuals. There is nothing to dismiss.

III. CONCLUSION

   A. The motion of Supplementary Defendant Megan G Hofmeister to partially dismiss the First Amended Complaint [DE 62] is **DENIED**; and

   B. The motion of Supplementary Defendant Jamie S. Hofmeister to partially dismiss the First Amended Complaint [DE 76] is **DENIED**.

This August 25, 2010.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge