UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-107-KSF

JAMES H. LIMBRIGHT, et al.                                                                    PLAINTIFFS

vs.                                               **OPINION AND ORDER**

GEORGE HOFMEISTER, et al.                                                                DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' request with supporting documentation for attorneys' fees. The Court previously held as a matter of law that Plaintiffs were entitled to reasonable costs and out-of-pocket expenses, including reasonable attorneys' fees, in connection with the collection of amounts owing under a guaranty. DE 247. Plaintiffs filed detailed documentation in support of their fee and expense requests. DE 251. Defendants filed objections to the requests. The Court, having considered the record herein, awards fees as set forth below.

I.      **BACKGROUND**

This action arises out of the purchase of Plaintiffs' company, Performance Plastics, Inc., in 2000 by a company owned by George Hofmeister, Innovative Coating Technologies, Inc. ("ICT"), with promissory notes for most of the purchase price. ICT soon filed for bankruptcy, and Plaintiffs sought to recover on their promissory notes from the guarantors, George and Kay Hofmeister. After years of litigation in Michigan and Kentucky, a breached settlement agreement in 2007, an appeal, and further litigation in Michigan and Kentucky, this Court granted summary judgment in favor of Plaintiffs. *Limbright v. Hofmeister*, 2011 WL 5523713 (E.D. Ky. November 14, 2011). Defendants paid the underlying judgment, plus interest, in the amount of $1,209,418.20 on November 16, 2011. [DE 224].

The issue before the Court now is the amount Defendants owe Plaintiffs for their costs, expenses and attorneys' fees. The guaranty agreement provided in part:

> Guarantor acknowledges [his/her] obligation to pay the reasonable costs and out-of-pocket expenses of Holder [Limbrights] including, without limitation, reasonable attorneys' fees, in connection with the collection of the amounts owing under this Guaranty.

Case No. 5:01-cv-92-KSF (E. D. Ky.), Complaint, Exs. A, B. The Guaranty further provides that it guarantees "punctual payment," that it is "unconditional," and that it is a "continuing guarantee and shall continue in full force and effect, notwithstanding ... any other action or omission by the holder of this Note." *Id.* The award of fees on May 24, 2002 said: "This Court shall retain jurisdiction of this matter for the sole purpose of entertaining Plaintiffs' Petition for Subsequent or Additional Attorney Fees, Costs and Interest." DE 229-3, p. 2.

This Court previously held that the Hofmeister children ("Children") were "not personally liable for fees and expenses" since they were not parties to the guaranties, but that the Florida condo they own was a fraudulent transfer to them from George and Kay Hofmeister and, therefore, will be subject to any award of fees. DE 247, p. 5. Through March 2012, Plaintiffs seek a total of $569,488.09 in attorney fees and $15,928.32 in expenses.

II.     ANALYSIS

   A.     Standard

"In diversity cases, attorneys' fees are governed by state law." *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). This diversity case was transferred from Michigan pursuant to 28 U.S.C. § 1404(a); thus, Michigan law applies. DE 46, p. 6. Michigan courts recognize that contractual provisions for payment of attorney fees are enforceable. *Central Transport, Inc. v. Fruehauf Corp.,* 139 Mich. App. 536, 362 N.W.2d 823, 829 (1984). *See also Fleet Business Credit v. Krapohl Ford Lincoln Mercury Co.*, 274 Mich. App. 584, 735 N.W.2d 644, 648 (2007) (Attorney fees awarded under contractual provisions are considered damages, not costs); *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 53 Mich. App. 359, 220 N.W.2d 83, 87

2

(1974) ("[T]he amount of the attorneys' fees is an element of the principal debt; the fees are not 'costs' within the meaning of statutes which authorize or limit the taxation of costs."); *Michigan National Leasing Corp. v. Cardillo*, 103 Mich App. 427, 302 N.W.2d 888, 892 (1981) (Court erred by denying attorney fees under personal guaranty by corporate owners).

The guaranty agreement in this case specifically states that a breaching party is only responsible for "reasonable attorneys' fees in connection with the collection of the amounts owing under this Guaranty." The first issue is the methodology for determining "reasonableness." The landmark case on this subject is *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which has been followed by Michigan courts. *See e.g. Smith v. Khouri*, 481 Mich. 519, 751 N.W.2d 472, 479 (2008). The burden of proving the reasonableness of the requested fees rests with the party making the request. *Id.* at 478.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 434. In determining the reasonableness of the fee, a court should consider the following factors under the totality of circumstances.

1. the professional standing and experience of the attorney;
2. the skill, time and labor involved;
3. the amount in question and the results achieved;
4. the difficulty of the case;
5. the expenses incurred; and
6. the nature and length of the professional relationship with the client.

*Khouri*, 751 N.W.2d at 479.

### B. Plaintiffs' Fee and Expense Request

Counsel for the Plaintiffs provided detailed billing records for review by opposing counsel and the Court. Plaintiffs' counsel request fees totaling $569,488.09, comprised of $487,648.59 for Conlin, McKenney & Philbrick, P.C. of Ann Arbor, Michigan, and $81,839.50 for Cox Law, PLLC of Lexington, Kentucky. Total expenses requested are $15,928.32, broken down to $11,114.72

3

for Conlin, McKenney & Philbrick and $4,813.57 for Cox Law. DE 251. These requests do not include $17,899.46 for Conlin firm time that was not charged to the Limbrights or was discounted as a professional courtesy. DE 251-1, p. 5.

The hourly rates charged by counsel changed over the lengthy course of this litigation, but the averages for the Conlin firm were as follows: Partner Bruce N. Elliott, $285.74 per hour; Partner Joy M. Glovick, $195.31 per hour; Partner Dennis R. Valenti, $253.22 per hour; Associate Donald A. Winningham, $123.92 per hour, and Paralegal Corey O. Tidman, $108.29 per hour. See DE 251-1, pp. 4-5. Mr. Elliott has been practicing law for 34 years and has an "AV" rating. Mr. Valenti has a "BV" rating. Ms. Glovick has been practicing for 8 years. DE 251-1, p. 2; DE 251-2, p. 2. Mr. Cox worked with three firms during the course of the litigation, but maintained his hourly rate for this case at the initial hourly rate of $250.00. He has been actively involved in private practice for more than 23 years and has a "BV" rating. DE 251-3, p. 2.

The judgment amount the Defendants paid to Plaintiffs in this matter was $1,209,418.20. DE 224, p. 2. While the total fee request through March 2012 of $569,488.09 is large in relation to the judgment, most of it is understandable. A partial chronology provides some insight.

Case No. 2:04-cv-60270, E.D. Mich.

> June 14, 2005: The court granted most of Plaintiffs' motion to compel numerous documents relating to their claims of fraudulent transfers of assets by the Hofmeisters and alter ego theories. The motion was granted for eight requests relating to four entities, but was denied without prejudice as to two entities based on Defendants claims that the documents were not in their possession or control. Three requests were denied as unduly burdensome. DE 26.
>
> November 14, 2005: The court granted Plaintiffs' motion to impose sanctions after it was informed that George Hofmeister was president of Entry Holdings and had access to its documents, contrary to his prior representations. George Hofmeister was assessed $750.00 personally in reasonable costs and attorney fees. DE 49.
>
> February 8, 2006: The court granted Plaintiffs' motion for enforcement of sanctions. George Hofmeister was ordered to produce various documents within fourteen days and to appear for his deposition within thirty days. Hofmeister was ordered to pay Plaintiffs' counsel costs and fees in the amount of $1,000.00. DE 56.

4

April 11, 2006: The court granted Plaintiffs' motion to compel discovery from the Supplementary Defendants.

September 27, 2006: The court declined to grant Plaintiffs' motion for default judgment for Defendants' continuing discovery violations, but noted that "Defendant Hofmeister has been repeatedly uncooperative and recalcitrant in discovery, that he has been warned of the drastic sanctions that would await him for further discovery abuses, and that he has twice been sanctioned monetarily under Rule 37." DE 102, p.5. The court also found it incredulous that the trusts had no record of a loan or guarantee of $740,000.00 to George Hofmeister for the purchase of three horses and no documentation for a $450,000 loan to the Hofmeisters. *Id.* at 3-4, 5-6.

November 16, 2006: The court granted a preliminary injunction prohibiting the Hofmeisters from selling, disposing of, encumbering, or alienating any nonexempt property in which they hold a legal or beneficial interest. Additionally, the trustee was similarly enjoined from disposing of property except in the ordinary course of business. If property was sold, the proceeds were to be placed in a special account. DE 123.

On December 14, 2006, the Limbrights and the Hofmeisters mediated a settlement of the claims against the Hofmeister Family Trust ("HFT"); however, the settlement agreement was not signed until January 9, 2007. Meanwhile, on December 20, 2006, the Hofmeisters' Florida condo was transferred to their Children. On December 31, 2006, most of the assets of the HFT were transferred to the Children and promptly placed in separate trusts for each child. By the time the HFT signed the January 9, 2007 agreement to pay $950,000 to the Limbrights, the HFT had no future income. *Limbright v. Hofmeister*, 2011 WL 5523713 at *5, *7 (E. D. Ky. November 14, 2011). The Childrens' Trusts paid $300,000 of the settlement amount to the Limbrights, but no further payment was made on the settlement. *Id.* at *4. The parties had agreed, in the event of a default, that a Consent Judgment could be entered by the court in the amount of $1,300,000, less any payments already made. DE 135, pp. 3-4.

May 6, 2008: The Michigan court granted Plaintiffs' motion to reinstate the lawsuit and enter consent judgment. DE 135, 136.

June 2, 2008: The Hofmeisters appealed the consent judgment to the Sixth Circuit. DE 139. The judgment was affirmed by the Sixth Circuit on May 28, 2009. DE 147.

Case No. 2:08-cv-12336 (E. D. Mich.)

May 30, 2008: Plaintiffs initiated the present case in Michigan and included the Children and the Childrens' Trusts (CTs) as Supplementary Defendants.

5

<u>March 31, 2009</u>: The court granted Defendants' motion to dismiss the Children for lack of personal jurisdiction and transferred the remainder of the case to Kentucky.

<u>Case No. 5:09-cv-107 (E.D. Ky.)</u>

<u>May 13, 2009</u>: Defendants filed their second motion to dismiss and requested, alternatively, that Plaintiffs be required to restate their claims. DE 40.

<u>February 1, 2010</u>: This Court granted the motion to dismiss only to the extent relief was sought against the assets of the Children, who were no longer parties, but denied the rest without prejudice to Plaintiffs' intent to file an amended complaint to add the Children. DE 46.

<u>March 18, 2010</u>: Defendants again moved to dismiss, which motion was denied on April 27, 2010 as a successive motion under Fed. R. Civ. P. 12(g)(2). DE 54, DE 58.

<u>May 25, 2010</u>: Defendants filed their fourth motion to partially dismiss repeating the same arguments previously rejected. DE 62.

<u>July 14, 2010</u>: Defendants filed their fifth motion to partially dismiss. DE 76.

<u>August 25, 2010</u>: This Court denied the motions to dismiss, noting that Rule 12(g)(2) was designed specifically to prevent such dilatory motion practice and that the present motions were filed solely for the purpose of delay. DE 84.

<u>September 1, 2010</u>: Defendants were ordered to produce requested documents within fourteen days. DE 89.

<u>September 24, 2010</u>: One Defendant filed a sixth motion to dismiss. DE 93.

<u>October 15, 2010</u>: Defendants were reminded that the September 1, 2010 order applied broadly and that documents should already have been produced. Defendants were also ordered to provide a list and description of any bank accounts held by the HFT and an evolution of ownership of MW Universal. The depositions of Defendants were ordered to occur within the next 30-45 days. The court said that the "intensity of defense counsel's schedule is not a basis for avoiding this time line." DE 98.

<u>October 28, 2010</u>: Defendants' sixth motion to dismiss was denied. DE 101.

<u>December 2, 2010</u>: Following a telephone conference, Defendants were ordered to schedule the depositions of Mr. Hofmeister and Mr. Clemmens in December and to revisit a tax return issue. DE 103.

<u>December 15, 2010</u>: Following a telephone conference, the parties were again ordered to schedule the depositions of Mr. Hofmeister and Mr. Clemmens. DE 105.

<u>February 1, 2011</u>: Once again, the parties had a telephone conference with the court regarding discovery issues, and Defendants were ordered to immediately determine the availability of Mr. Holmes for his deposition and to clarify the production schedule for review

of MW Universal documents. Plaintiffs were authorized to file a motion to modify and/or compel, and a briefing schedule was set. DE 111.

<u>April 15, 2011</u>: The court clarified that discovery should include the lineage from the HFT to the Children to the CTs, and said "Defendants' reading of the [September 1] order has been too restrictive." DE 133, pp. 2, 4. The court found that "Defendants have violated the September 1, 2010, order with respect to discovery of HFT assets and liabilities." Immediate discovery of various documents was ordered, as well as follow-up compliance reports. *Id.* at 4-6.

<u>May 23, 2011</u>: Following a telephonic conference, the court imposed deadlines for deposing Mrs. Hofmeister, for producing financial statements, for supplementing disclosures of credit card statements, and for deposing Defendants' experts. DE 141.

<u>June 30, 2011</u>: The court partially denied the Hofmeisters' motion to quash a subpoena to one of their banks and rejected their argument that the Plaintiffs' subpoena was "nothing more than harassment and bullying." The court limited the subpoena in scope and time, however. The court noted that it "has repeatedly addressed disputes between the parties, where the Limbright parties seek information about assets and the Hofmeister parties contend the information to be beyond the scope of the action." DE 156, p. 2.

<u>July 15, 2011</u>: The court denied the Hofmeisters' motion to strike the second amended complaint. DE 169.

<u>November 14, 2011</u>: This Court granted the majority of Plaintiffs' motion for summary judgment. It held that George and Kay Hofmeister are the alter egos of the CTs, the CTs are the alter egos of HFT, and George and Kay Hofmeister are the alter egos of HFT. It also held that the transfers from the Hofmeisters to the HFT, the transfers from the HFT to the Children, and the transfers from the Children to the CTs were with actual intent to defraud creditors. Plaintiffs' claims of entitlement to two judgments and to punitive damages were denied. DE 222.

Turning to the initial estimate of the value of Plaintiffs' lawyers' services and the reasonableness thereof, the Court first notes that the lead attorneys are very experienced and highly rated by their peers. The result they achieved was the full amount of the million dollar judgment they sought to collect. The case was extremely difficult to prosecute for a variety of reasons. The efforts by the Hofmeisters to hide assets involved complex corporate and family trust transactions. Because many of the transactions were not supported by any documents, proof was difficult for the Limbrights to find. Even in a case with a strong paper trail, proof of actual intent to defraud a creditor or constructive fraud is not easy. *See* M.C.L. 566.34(2). Plaintiffs' attempts at discovery were repeatedly met with evasiveness and obstruction by Defendants as the record

7

shows. Overall, the Court finds that most of the fees requested were reasonable under the circumstances. *Khouri*, 751 N.W.2d at 479.

### C. Defendants' Objections To Fee Request

Defendants object to the requested fees on numerous grounds. DE 253. Notably, Defendants do not make any objection to the hourly rates charged by Plaintiffs' counsel. In addition, this Court is familiar with hourly rates charged in this community and finds the rates charged in this case to be in line with those and to be reasonable. *See also Career Agents Network, Inc. v. CareerAgentsNetwork.Biz*, 722 F. Supp.2d 814, 823 (E.D. Mich. 2010) (In 2005, Sixth Circuit found $200 hourly rate is reasonable.)

#### 1. Fees Incurred in 2004 Michigan Case

##### a. Inappropriate to Award

First, Defendants argue that it would be inappropriate for this Court to make any award for attorney fees and expenses incurred in the predecessor collection action initiated in the United States District Court for the Eastern District of Michigan in 2004. They argue that any determination should be made by "Judge David Lawson, who presided over that case, and who is in the best position to evaluate the time spent in those proceedings and the reasonableness of same." *Id.* at 3. However, Judge Lawson was not assigned to the case until September 20, 2006, shortly before it was dismissed as settled February 1, 2007. Case No. 2:04-cv-60270, DE 98, 130. The case was reinstated in January 2008 after Defendants breached the settlement agreement and was resolved by a consent judgment May 6, 2008. DE 131, 136. Defendants filed several motions in the Michigan case in August 2011, but withdrew them in November 2011, before any ruling by that court. DE 149, 160. By contrast, this Court entered the original judgment in 2002 and has been dealing with the collection issues since the transfer in April 2009. Many of the discovery disputes resolved by this Court are the same or similar to the discovery disputes in the 2004 Michigan case before Judge Lawson was assigned the case. Moreover, this Court decided the

8

dispositive motions. It is the opinion of this Court that it is more familiar with the time-consuming disputes between the parties and is in a better position than Judge Lawson to assess the reasonableness of the efforts of Plaintiffs' counsel to collect the judgment. Accordingly this objection will be overruled.

b. No Collection on Guaranty After Settlement

Defendants argue that the 2007 settlement, which was promptly breached by Defendants, and the resulting judgment against Defendants in the Michigan court supplanted the guaranty and rendered all subsequent efforts to collect the amounts owed immune from liability for attorney fees under the guaranty. DE 253, pp. 4-5. This same argument was flatly rejected by this Court as devoid of authority or logic and as contrary to the terms of the guaranty on March 22, 2012. DE 247, p. 4. The guaranty will be enforced in accordance with its plain language.

c. No Fees For Motions Filed in Michigan in 2011

Defendants argue that Plaintiffs' fees relating to defense motions filed in Michigan in July 2011 should not be compensable. Defendants filed the Michigan motions right after this Court denied their motion to strike Plaintiffs' Second Amended Complaint [DE 169] and simultaneously with motions to stay all proceedings in this Court [DE 173]. The alleged purpose of the Michigan motion was to determine "amounts owed regarding the judgments." DE 173, p. 2. Plaintiffs had no choice but to respond to the motion and also to respond to a subsequent motion for an expedited hearing. Defendants also moved to file a supplemental brief, which was summarily denied by the Michigan court. Case No. 2:04-cv-60270, DE 159. Meanwhile, this Court denied Defendants' motion to stay [DE 179] and granted Plaintiffs' motion for summary judgment [DE 222]. One day after summary judgment was granted by this Court, Defendants moved to withdraw their Michigan court motions. Those defense motions, which also were related to the present case, had no logical purpose except to potentially delay a decision by this Court. Plaintiffs are entitled to be compensated for responses to those motions.

9

### 2. Objection to Fees for Fee Dispute

Relying on a 1992 district court case out of Maine, Defendants argue that generally there is no award for the fees incurred in seeking fees. DE 253, p. 14. To the contrary, the Sixth Circuit said: "The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over...." *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986). *See also Auto Alliance International, Inc. v. United States Customs Service*, 155 F. A'ppx. 226, 229 (6th Cir. 2005) ("The district court properly recognized that the recovery of fees for time spent preparing a party's request for attorney's fees is legitimate."). *Coulter* was a fee shifting case in which there was no dispute regarding the entitlement to fees, but the Court held that there should be guidelines limiting the amount of "fees for fees." The court said that hours for preparation of a fee petition should not exceed 3 percent of the hours for the main case where there was no trial. *Coulter*, 805 F.2d at 151. The District Court for the Eastern District of Michigan distinguished the *Coulter* guideline as inapplicable where the entitlement to fees is an issue. *Career Agents Network, Inc. v. CareerAgentsNetwork.Biz*, 722 F. Supp.2d 814, 826 (E.D. Mich. 2010) (Court awarded fees for 20 percent of the hours billed to defend the principal case.).

In the present case, the question of entitlement to attorney fees under the guarantee was strenuously opposed by the Defendants. See DE 229, 233, 235, 237, 242. By the Court's calculation, however, less than 25 hours were billed for briefing this issue out of a total of nearly 1900 hours on the principal case. See fee and motion to amend entries on pages 75-76, November 18, 2011, to December 23, 2011. DE 251-1. No time appears to have been billed for preparation of the fee petition itself after this Court granted Plaintiff's motion on March 22, 2012. The Court finds these hours to be reasonable.

3. Remaining Objections

Defendants fly-specked the billing record and asserted the usual litany of objections, including vague entries, duplicative billing, excessive billing, block billing, fees for withdrawn motion, work on unrelated matters and billing for bringing new counsel up to speed. DE 253, pp. 5-14. The Court finds that there are some vague entries, duplicative billing, fees for a withdrawn motion and the like. Moreover, the Court is aware that Plaintiffs' counsel asserted a few very tenuous arguments, such as the claim of a right to both the Michigan and the Kentucky judgments. However, the vast majority of the time billed was in pursuit of discovery for complex issues and in efforts to overcome the evasiveness and obstruction tactics by Defendants.

The present case is readily distinguishable from *Auto Alliance International, Inc. v. United States Customs Service*, 115 F. App'x. 226 (6th Cir. 2005), where "the dispute was a relatively unexceptional FOIA case that was filed prematurely." *Id.* at 228. The court there found that a total of 510.25 attorney hours was high under the circumstances and reduced the fee request by 25 percent. By contrast, the present case involved complicated transactions, missing or non-existent records, and a defense strategy of obstruction over a period of nearly seven years.

The Court does not agree that Defendants' objections are all well taken. To take into account those objections that appear to have some merit, however, the Court will discount the total fee request by 10 percent or $56,948.51. Accordingly, judgment will be entered in favor of Plaintiffs for fees in the amount of $512,539.28, plus expenses of $15,928.32.

### III. CONCLUSION

**IT IS ORDERED** that Plaintiffs' request for fees and expenses [DE 251] is **GRANTED IN PART** and that judgment shall be entered in favor of Plaintiffs in the sum of $512,539.28, plus expenses of $15,928.32 and against all Defendants, with the exception of the Hofmeister Children, Scott R. Hofmeister, Jamie S. Hofmeister, and Megan Hofmeister personally. Nonetheless, the Florida Condo owned by the Children shall remain subject to the judgment.

This October 18, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge