UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-cv-107-KSF

JAMES H. LIMBRIGHT, et al.                                                                    PLAINTIFFS

vs.                                        **OPINION AND ORDER**

GEORGE HOFMEISTER, et al.                                                                DEFENDANTS

\* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' motion for appointment of a receiver and for injunctive relief. For the reasons discussed below, the motion will be denied.

I.      BACKGROUND

Based upon this Court's Opinion [DE 222; *Limbright v. Hofmeister*, 2011 WL 5523713 (E.D. Ky. Nov. 14, 2011)] that certain assets were fraudulently transferred to avoid creditor obligations, Plaintiffs argue that they are entitled to appointment of a receiver and an injunction prohibiting conveyance of certain assets by the Defendants. [DE 255]. Plaintiffs state that appointment of a receiver is an available remedy under Michigan law regarding fraudulent transfers, particularly MCL 566.37(1)(a), (c) and MCL 600.6104(3) - (5).

Defendants oppose the motion on multiple grounds. [DE 256]. They note that Plaintiffs were paid a total of $1,509,418.20 on their $1,200,000.00 judgment and that a supplementary judgment was not entered until March 16, 2012 for $194,464.87. The Hofmeister children, Megan Hofmeister, Scott Hofmeister and Jamie Hofmeister ("Children") have offered to pay this additional amount in exchange for an order reflecting satisfaction of various judgments. DE 258. That motion was granted November 2, 2012 [DE 264], but no payment has been made to date. An award of attorneys' fees and expenses totaling $528,467.60 was entered October 18, 2012. DE 261. The underlying case is on appeal to the Sixth Circuit. Defendants advise that mediation in that court was sufficiently productive that briefing was suspended while negotiations are ongoing. DE 256,

p. 5. Additionally, Defendants argue that less intrusive means of collecting the judgment have not been attempted by Plaintiffs. *Id.* at 3-4. Defendants contend that there have been no transfers of assets in recent years and that Plaintiffs have not shown there is imminent danger of property being lost, concealed or diminished in value. They also argue that receivership is not an authorized remedy for member interests in a limited liability company and that the value of the Florida Condo alone exceeds the judgment amount. [DE 256]. Defendants also object to the request for injunctive relief on the ground that Plaintiffs have failed to demonstrate a likelihood of success on the merits and irreparable harm to Plaintiffs.

Plaintiffs reply that it took them ten years and extraordinary effort to collect their underlying judgment. DE 257, p. 1. They argue Defendants' authorities are distinguishable. *Id.* at 2-3. They particularly state they are "not aware of any liens on the Transferred Assets." *Id.* at 3. Plaintiffs suggest that the history of fraudulent conduct in this case is sufficient by itself to justify appointment of a receiver.

## II. ANALYSIS

### A. Appointment of a Receiver

While appointment of a receiver is an available remedy for fraudulent transfers, a plaintiff must show that the facts and circumstances support such an appointment. "The primary purpose of a receiver is to preserve property and to dispose of it under the order of the court." *Weathervane Window, Inc. v. White Lake Const.* Co., 192 Mich. App. 316, 480 N.W.2d 337, 340 (1991). "[T]he appointment of a receiver is an extraordinary equitable remedy that is justified only in extreme situations." *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 432 (E.D. Mich. 1995). *See also In re Trudel*, 757 N.W.2d 116 (Mich. 2008) ("[T]he appointment of a receiver is a 'harsh proceeding which should only be resorted to in extreme cases.'"). "[A]s we shall emphasize, a receivership must be thoroughly justified on the facts, is always to be considered a remedy of 'last resort,' and therefore is not often applied in practice." *Petitpren v. Taylor School District*, 104 Mich

App. 283, 304 N.W.2d 553, 558 (1981) (quoting *Perez v. Boston Housing Authority*, 379 Mass. 703, 400 N.E.2d 1231, 1249 (1980)). "If less intrusive means are available to effectuate the relief granted by the trial court, a receiver should not be used." *Id.*

*Steinberg v. Young*, 641 F. Supp.2d 637 (E.D. Mich. 2009), identified the following factors that may be considered in evaluating a motion for appointment of a receiver: "1) the existence of a valid claim by the moving party; 2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; 3) imminent danger that property will be lost, concealed or diminished in value; 4) inadequacy of legal remedies; 5) lack of less drastic equitable remedies; and 6) the likelihood that appointment of a receiver will do more harm than good." *Id.* at 641.

Plaintiffs seek a receiver for three fraudulently transferred assets (the "Transferred Assets"): 1) a condominium at 2400 S. Ocean Drive 8192, Ft. Pierce, Florida; 2) membership interests in AHD International, LLC; and 3) all stock and other interests in AMI, Inc. DE. 255, p. 2. An "Asset Listing" on the date of the transfer, December 31, 2006, showed a fair market value for 51 percent of the stock in AHD at $20 million and for 100 percent of the stock in MW Universal (wholly owned by AMI) at $25 million. DE 180-15. An "Asset Listing" dated November 30, 2005, showed the Florida Condo with a fair market value of $750,000. If there are no liens or debts on these assets, as the Limbrights suggest [DE 257, p. 3], the value of each of the transferred assets significantly exceeds the new judgments total of $722,932.47. Plaintiffs' remark about the absence of liens tends to defeat their claim of entitlement to a receiver for all three of the assets.

On the other hand, Plaintiffs' mere argument that they are ignorant of any liens is not admissible evidence for a court to consider. Even if there were admissible evidence, liens are not the only item to consider. If the property is encumbered with secured debt of a higher priority, there may be nothing left for a receiver to preserve. The sworn testimony of the former trustee of the Hofmeister Family Trust, Douglas Q. Holmes, suggests that may be the case. DE 181-12, Holmes March 24, 2011 Deposition.

> Q. Okay. What was the value of AHD, of this particular interest in AHD, at the time you distributed it to the children on December 31, 2006?
>
> A. All I can remember big picture of this stuff is it was pretty much worthless assets, but I don't remember what the value was.
>
> Q. Oh, you think AHD was a worthless asset? Is that what you said?
>
> A. I have some vague memory of all the assets having little to no value.
>
> Q. Is $20 million – I'm just curious, is $20 million worthless to you?
>
> A. Well, that's asset. I don't know what the net value is. All these things had liabilities that made them under water, so this is just the value of the asset. You know, in an accounting.

*Id.* at 204.

> Q. It's your position that American Metals was worthless at the time? Is that what you're saying?
>
> A. All I remember is those entities, and each of them individually, had no equity value, limited or even negative.

*Id.* at 218. *See also id.* at 206, 224-225, 291-292.

If, as this testimony suggests, there are creditors with priority whose interests would consume all of the value of the company assets, the request to appoint a receiver should be denied. As in *Steinberg,* there would be nothing left for a receiver to protect for the benefit of the Plaintiffs. *Steinberg*, 641 F. Supp.2d at 641. The same would be true of the condo if there are liens with priority over the Plaintiffs such that there is no equity left. If any secured liens were created to defraud creditors, that would be a separate issue requiring resolution. Thus, at present, Plaintiffs have failed to demonstrate that the extraordinary remedy of a receiver is appropriate under the circumstances.

In addition, Defendants are correct that MCL § 450.4507 precludes appointment of a receiver for a Michigan limited liability company. That statute provides in part:

> (1) If a court of competent jurisdiction receives an application from any judgment creditor of a member of a limited liability company, the court may charge the membership interest of the member with payment of the unsatisfied amount of judgment with interest.

>(5) A charging order is a lien on the membership interest of the member that is the subject of the charging order. However, a person may not foreclose on that lien or on the membership interest under this act or any other law, and the charging order is not an assignment of the member's membership interest....
>
>(6) This section provides the exclusive remedy by which a judgment creditor of a member may satisfy a judgment out of the member's membership interest in a limited liability company.

MCL § 450.4507. The Court has no information at present as to whether AHD is a Michigan LLC subject to this provision. It also is not clear that Michigan law would apply to the new Kentucky judgments. In any event, the above statute would not apply to AMI, Inc. or to its subsidiary, MW Universal, Inc. The question remains, however, whether there are debts with priority.

Turning to the *Steinberg* factors, the Court finds that the Limbrights have not justified the extreme remedy of appointment of a receiver at this point. Defendants concede the first factor, the existence of a valid claim, to Plaintiffs. DE 256, p. 5. They deny the second factor, the probability that fraudulent conduct has occurred or will occur to frustrate the claim, because assets have not been transferred since 2006. DE 256, p. 5. However, the record in this case is replete with a history of fraudulent activity. *See Limbright v. Hofmeister*, 2011 WL 5523713 (E.D. Ky. Nov. 14, 2011). While the companies were not transferred after 2006, they were depleted by the Hofmeister's use of company funds for their personal expenses. *Id.* at *4. Accordingly, the Court finds the second factor satisfied.

The third factor, the imminent danger that property will be lost, concealed or diminished in value, is more troublesome. There is no evidence that depletion of these or other assets has continued to the present. The fourth factor, inadequacy of legal remedies, also is not supported by current, specific evidence. Similarly, the fifth factor, lack of less drastic equitable remedies, is not supported by any evidence accompanying the motion. No mention is made of legal remedies or equitable remedies attempted unsuccessfully after the two new judgments.

Finally, the sixth factor, the likelihood that appointment of a receiver will do more harm than good, is vigorously argued by Defendants. They claim: "The idea of a receiver coming in and

managing the business of AHD and MW is nothing short of frightening. Barring some exceptional background in neutraceuticals and the automotive supplier business, a receiver will drain the estate with mismanagement in an area of business he/she will likely know nothing about and in attempting (likely hopelessly) to get up to speed." DE 256, p. 6. Of course, Defendants could avoid that harsh consequence by making arrangements to pay the judgment. Nonetheless, there is some merit to this argument of potentially more harm than good. In *Michigan Minerals, Inc. v. Williams*, 306 Mich. 515, 11 N.W.2d 224 (1943), the court affirmed the denial of a receiver where the receiver would have to take over the operation of oil wells which "can be easily damaged and ruined by careless operation." *Id.* at 228. The court noted the technical nature of the work, the competency of the present operator, and the fact that bookkeeping errors were minor. While somewhat factually distinguishable from the present case, *Michigan Minerals* indicates the caution that should be exercised before appointing a receiver to take over an ongoing business. That does not mean a business is immune from appointment of a receiver, but the Court would need more specific evidence that takes that factor into account before an appointment would be justified.

    **B.**    **Injunctive Relief**

Plaintiffs also request an order "[e]njoining all Defendants from selling, assigning or otherwise conveying any interest in any of the Transferred Assets." DE 255, p. 3. Had Plaintiffs made the required showing for appointment of a receiver, some form of injunctive relief may have been appropriate. However, the absence of sufficient evidence that property will be lost, concealed or diminished in value and that legal remedies are inadequate negates a finding of irreparable harm sufficient to support injunctive relief at this time.

**III.**    **CONCLUSION**

    **IT IS ORDERED** that:

    A.    Plaintiffs' original motion to appoint a receiver [DE 254] is **DENIED AS MOOT**; and

6

B. Plaintiffs' corrected motion to appoint a receiver and for injunctive relief [DE 255] is

**DENIED WITHOUT PREJUDICE**.

This November 15, 2012.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**